```
                    FILED _____           _____ RECEIVED
                    _____ ENTERED         _____ SERVED ON
                              COUNSEL/PARTIES OF RECORD

                              NOV - 3 2011

                          CLERK US DISTRICT COURT
                            DISTRICT OF NEVADA
                    BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DEREK ANTHONY COSTANTINO, | 3:10-cv-00078-HDM (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| STATE OF NEVADA, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss. (Doc. #33.)[1] Plaintiff has opposed (Doc. #37), and Defendants have replied (Doc. 39). After a thorough review, the court recommends the motion be granted in part and denied in part.

## I. BACKGROUND

At all relevant times, Plaintiff Derek Anthony Costantino (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 10) 1.)[2] Plaintiff is currently housed at High Desert State Prison, but the allegations giving rise to this action took place while he was housed at Ely State Prison (ESP). (*Id.*, Doc. # 37 at 2.) Plaintiff, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983. (Doc. # 10 at 1.) Defendants are Howard Skolnik, James Cox, E.K. McDaniel, Adam Endel, Renee Baker, Debra Brooks,

---

[1] Refers to court's docket number.

[2] Plaintiff is currently housed at High Desert State Prison. (Doc. # 37 at 2.)

Correctional Sergeant Bryant, and Pam DelPorto. (*Id.* at 3-4.) Plaintiff seeks injunctive and declaratory relief as well as damages. (*Id.* at 18.)

In Count I, Plaintiff alleges that Defendants DelPorto, Brooks, Endel, Baker, Bryant, McDaniel, Cox, and Skolnik violated his due process rights by designating him as a member of a Security Threat Group (STG)/Disruptive Group (DG), without affording him the due process protections outlined by NDOC Administrative Regulation (AR) 446 and Operational Procedure (OP) 446. (Doc. # 10 at 5.) Specifically, Plaintiff asserts he was designated as a member of the Aryan Warriors and was placed in ESP's Maximum Lockup Unit (MLU), which he contends constituted an atypical and significant hardship in relation to the ordinary incidents of prison life (*Id.* at 5-7.)

In Count II, Plaintiff alleges that Defendants Skolnik, Cox, McDaniel, Endel, and Baker violated his Fourteenth Amendment due process rights and his First Amendment right to be free of retaliation, in connection with his placement in the MLU based on his status as a member of the STG/DG and alleged disciplinary violations. (Doc. # 10 at 8.) First, he asserts that Defendants failed to follow the procedures outlined in AR 509, governing protective or segregated housing, and that the disciplinary hearing finding of guilt was not based on any evidence. (*Id.* at 8-10.) Second, he asserts that the guilty finding on disciplinary charges and his placement in the MLU were in retaliation for filing grievances and lawsuits.[3] (*Id.* at 10-11.)

In Count III, Plaintiff alleges claims for due process related to his indefinite confinement in MLU, and the deprivation of his personal property, as well as a claim that he is being held in MLU in retaliation for filing grievances and lawsuits.[4] (Doc. # 10 at 12-15.) These claims are asserted against Defendants Skolnik, McDaniel, Endel, Baker, and Bryant.

Defendants Baker, Brooks, Cox, DelPorto, Endel, McDaniel, Skolnik, and the State of

---

[3] His Eighth Amendment claim based on the conditions of confinement in MLU was dismissed with prejudice on screening. (*See* Doc. # 9 at 5.)

[4] Plaintiff's equal protection and Eighth Amendment claims in Count III were dismissed with prejudice on screening. (*See* Doc. # 9 at 6-7.)

2

Nevada, in relation to the NDOC (Defendants) filed the instant Motion to Dismiss on the following grounds: (1) Defendants cannot be sued in their official capacities under 42 U.S.C. § 1983; (2) Plaintiff failed to properly exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1997(e); and (3) the claim Plaintiff did properly exhaust is barred by the statute of limitations. (Doc. # 33.)[5]

The motion is not filed on behalf of Defendant Bryant, and it does not appear he has been served. Plaintiff is notified that under Federal Rule of Civil Procedure 4(m), a plaintiff has 120 days after the complaint is filed to serve a defendant, and failure to do so will result in dismissal. Fed.R.Civ.P. 4(m). Accordingly, Plaintiff should be given thirty (30) days within which to serve Defendant Bryant or he will be dismissed without prejudice pursuant to Rule 4(m).

## II. LEGAL STANDARD

### A. Fed.R.Civ.P. 12(b)(6)

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). Under Rule 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted). The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be

---

[5] Defendants' Motion to Dismiss does not challenge the due process claim in Count II. (*See* Doc. # 33 at 1.)

granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.2d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. In addition, pro se pleadings must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*"). As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**B. Unenumerated 12(b)(6) motion- exhaustion**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the

agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

During the time period in question, for prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation 740 (AR 740).[6] (Doc. # 33 at 4, Doc. # 33-2 at 11.) The administrative process consisted of: (1) an informal level grievance that is reviewed and responded to by an inmate caseworker; (2) a first level formal written grievance appealing the informal grievance decision to the warden; and (3) a second level grievance appealing the first level grievance decision, which is reviewed by the Administrator or Division Head. (*Id.* at 14-18.) For issues involving personal property damage or loss, personal injury, medical claims or other tort claims, including civil rights claims, the inmate must have filed the informal level grievances within six (6) months. (Doc. # 33-2 at 14.) For other issues, including classification,

---

[6] AR 740 has since been revised.

5

disciplinary, mail, correspondence, and food, the informal level grievance must have been filed within ten (10) calendar days. (*Id.*) The inmate then has five (5) calendar days from the date of receipt of the informal grievance decision to appeal to the warden in a first level grievance. (*Id.* at 16.) Likewise, the inmate has five (5) calendar days from the date of receipt of the decision on the first level grievance to appeal in a second level grievance. (*Id.* at 17.)

### III. DISCUSSION

#### A. Claims Against Defendants in their Official Capacity for Damages

A state official sued in his or her official capacity for damages is not a person subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Claims against defendants in their official capacities are actually suits against the entity of which the named defendants are agents. *See Kentucky v. Graham*, 473 U.S. 159 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. The real party in interest in such suits is the entity itself, and the entity, not the named defendant, will be liable for any damages. *Id.* To the extent Plaintiff alleges official capacity damages claims, they should be dismissed with prejudice; however Plaintiff's official capacity claims for injunctive relief may proceed. *See Will*, 491 U.S. at 71 n. 10 (citations omitted) ("Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.").

#### B. Exhaustion

Defendants claim Plaintiff failed to exhaust available administrative remedies with respect to the following: (1) the due process claims in Count III (Doc. # 33 at 5-6); (2) the property claim in Count III (Doc. # 33 at 6); and (3) the retaliation claims in Count II and Count III (Doc. # 33 at 7).

To support their unenumerated (12)(b) motion, Defendants filed a Nevada Offender Tracking Information System (NOTIS) computer generated report entitled "Inmate Issue

6

1  History Report," which is a summary of grievances filed by Plaintiff, instead of attaching the
2  actual grievances submitted by Plaintiff along with the prison's responses. (*See* Doc. # 33-1 at
3  ¶ 9, Ex. B.) While NDOC summary of grievances is helpful, and the court does not discourage
4  Defendants from filing these reports, the summary should only serve as a supplement to the
5  actual documents that form the basis of their affirmative defense--the inmate grievance and
6  prison response. The NOTIS report often contains only a short one or two sentence summary
7  of a detailed grievance submitted by an inmate.

8  For example, Defendants argue that Plaintiff did not exhaust available administrative
9  remedies with respect to his personal property claim in Count III. (Doc. # 33 at 6.) Upon
10 exclusive review of the NOTIS report, this appears to have been an accurate depiction of the
11 events. (Doc. #33 Ex. B.) However, a review of the actual grievance forms filed by Plaintiff
12 reveals he did reference a property claim in the informal level of grievance 20062878299. (Doc.
13 # 76-82.) Comparing the NOTIS report to the grievance also reveals that the NOTIS report on
14 grievance 20062878299 merely contains a one sentence summary of the informal level
15 grievance ("I/M states administration is violating the laws of Nevada") (Doc. # 33-4 at 6), while
16 the grievance produced by Plaintiff is seven (7) pages long and quite detailed (Doc. # 37 at 76-
17 82). The discrepancy between the summary of the informal level grievance in the NOTIS report
18 and the grievance filed by Plaintiff is cause for concern, and further illustrates the need for
19 defendants to produce the actual grievances and prison responses to support an unenumerated
20 (12)(b) motion.

21 As stated above, failure to exhaust administrative remedies is an affirmative defense,
22 which Defendants bear the burden of proving. *See Wyatt*, 315 F.3d at 1119. By filing only the
23 NOTIS report summary of grievances to the exclusion of the actual grievance and prison
24 response, Defendants have not met their burden of proving Plaintiff failed to exhaust available
25 administrative remedies. That is not to say Defendants may not be successful in asserting this
26 defense in connection with a properly supported motion for summary judgment. At this
27 juncture, however, the unenumerated 12(b) motion to dismiss for failure to exhaust

administrative remedies should be denied because Defendants have not met their burden.

**C. Statute of Limitations**

Section 1983 does not contain its own statute of limitations. Therefore, federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims for cases venued in the forum state. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000)(citation omitted). Therefore, in Nevada, the statute of limitations for § 1983 actions is two years. Nev. Rev. Stat. § 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

Defendants assert that Plaintiff's due process claim in Count I is barred by the statute of limitations because Plaintiff was validated as a member of STG on July 12, 2007, completed the grievance process on September 13, 2007, and filed his original complaint in state court on January 13, 2010. (Doc. # 33 at 9.)

Plaintiff maintains that his claim is not focused on the STG *designation*, but instead centers on the allegation that he was denied the due process protections afforded him in connection with the designation, including timely notice of the designation and a timely and meaningful due process hearing, pursuant to AR 446 and OP 446. (*See* Doc. # 37 at 5, 8, *see also* Doc. # 10 at 5-7.) Specifically, he asserts that he did not receive proper notice of the designation until August 21, 2007 (Doc. # 37 at 8), and filed a grievance challenging the timing of the notice as well as its sufficiency on August 22, 2007 (*id.*). Then, he asserts Defendants responded to the August 22, 2007 grievance by telling him he would be scheduled for a due process hearing, when in fact, the due process hearing did not take place until October 20, 2009. (*Id.*) He further asserts that he suffered additional injury on December 5, 2008, when his housing status in MLU and STG designation affected the outcome of his parole hearing. (*Id.* at 9.) Plaintiff states that he grieved this on January 26, 2009, and this grievance was disposed of as of April 13, 2009. (*Id.*)

A review of Plaintiff's Amended Complaint clarifies that Plaintiff is not challenging the STG designation in and of itself, but instead, he is claiming he was not given proper due process

8

protections afforded him under the prison's regulations: (1) the timeliness and sufficiency of the STG designation notice; and (2) the timeliness of the due process hearing in connection with the STG designation. (Doc. # 10 at 5-7.)

While it appears from the NOTIS report that Plaintiff initiated the grievance process related to the timeliness and sufficiency of the STG designation notice on August 22, 2007, and completed the grievance process with respect to that claim on September 13, 2007, the court cannot make a definitive determination without reviewing the actual grievances and the prison's responses. Therefore, Defendants' Motion to Dismiss Plaintiff's claim in Count I that Plaintiff's due process rights were violated as a result of the untimeliness and insufficiency of the STG designation notice should be denied. As with the exhaustion claim, Defendants may be able to assert the statute of limitations defense as to this claim in connection with a properly supported motion for summary judgment, but it does not pass muster at this stage.

Defendants do not address Plaintiff's contention that his due process rights were violated because of the alleged failure to hold a timely due process hearing regarding the STG designation. (*See* Doc. # 33 at 8-9.) Their argument focuses on the due process in connection with the initial STG designation. (*Id.*) A review of the NOTIS report provided by Defendants does not indicate this claim was part of Plaintiff's grievance that was completed as of September 13, 2007. (*See* Doc. # 33-5 at 10.) Moreover, Plaintiff contends that the due process hearing was not held until October 20, 2009, indicating this claim is not barred by the statute of limitations. (*See* Doc. # 10 at 7.) Accordingly, Defendants' Motion to Dismiss Plaintiff's claim in Count I that his due process rights were violated because Defendants' failed to have a due process hearing on the STG designation until October 20, 2009, should be denied.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DISMISSING** official capacity damages claims, and **DENYING** the remainder of Defendants' Motion to Dismiss (Doc. #33).

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an order

9

that Plaintiff be given thirty (30) days within which to serve Defendant Bryant or he will be dismissed without prejudice pursuant to Rule 4(m).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: November 3, 2011.

_____
UNITED STATES MAGISTRATE JUDGE